UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CHARIDY T., | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CAUSE NO.: 1:20-CV-106-JVB |
| | ) |
| ANDREW SAUL, Commissioner of the | ) |
| Social Security Administration, | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Charidy T. seeks judicial review of the Social Security Commissioner's decision denying her disability benefits and asks this Court to remand the case. For the reasons below, this Court remands the Administrative Law Judge's decision.

### PROCEDURAL BACKGROUND

Plaintiff applied for supplemental social security income benefits on June 7, 2017. In her application, Plaintiff alleged that she became disabled on April 3, 2017. (AR 15). After a hearing in 2018, the Administrative Law Judge (ALJ) found that Plaintiff suffered from the severe impairments of ankylosing spondylitis, Legg-Calve-Perthes disease, fibromyalgia, degeneration of the cervical spine, and obesity. (AR 17). The ALJ also found that Plaintiff suffered from the non-severe impairments of obstructive sleep apnea, hypothyroidism, irritable bowel syndrome, chronic kidney disease, insulin resistance, and history of carpal tunnel syndrome repair. (AR 17). The ALJ found that Plaintiff is unable to perform her past work as a sewing machine operator, warehouse worker, machine spray painter, or candle maker. (AR 21). However, the ALJ found that she is capable of performing jobs in the national economy, such as cashier, inspector, or electrical accessories assembler. (AR 22). Therefore, the ALJ found her to be not disabled since

June 7, 2017, the date the application was filed. (AR 23). This decision became final when the Appeals Council denied Plaintiff's request for review.

## STANDARD OF REVIEW

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## DISABILITY STANDARD

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) Whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## ANALYSIS

Plaintiff offers two arguments to support her request for remand: that the ALJ erred in evaluating Plaintiff's symptoms and limitations; and that the VE's findings were not supported by substantial evidence.

2

**A. Subjective Symptoms**

An ALJ's subjective symptom analysis will be afforded "considerable deference" and will be overturned only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). An ALJ must consider a claimant's statements about his or her symptoms, including pain, and how these symptoms affect the claimant's activities of daily living and ability to work. 20 C.F.R. § 416.929(a). ALJs must weigh the subjective complaints, the relevant objective medical evidence, and any other evidence of the following:

    (1) The individual's daily activities;
    (2) Location, duration, frequency, and intensity of pain or other symptoms;
    (3) Precipitating and aggravating factors;
    (4) Type, dosage, effectiveness, and side effects of any medication;
    (5) Treatment, other than medication, for relief of pain or other symptoms;
    (6) Other measures taken to relieve pain or other symptoms;
    (7) Other factors concerning functional limitations die to pain or other symptoms.

*See* 20 C.F.R. § 416.929(c)(3); *see also* SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). The "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2.

Plaintiff asserts that The ALJ mischaracterized and cherry-picked evidence in the record in finding that her symptoms were less limiting than she alleges. The ALJ found that Plaintiff's subjective symptoms are "inconsistent because the substantial evidence of record fails to support the nature and severity of the allegations the claimant alleges." (AR 20). The ALJ noted that Plaintiff's Legg-Calve-Perthes disease was "virtually symptom free" by 2001, and that she only received "relatively conservative treatment." (AR 20). The ALJ also found that although Plaintiff began reporting pain in September 2016, "clinicians noted intact sensation, intact pulses, and although there was reference to the claimant needing a future hip replacement, conservative physical therapy was recommended." (AR 20). With regard to Plaintiff's fatigue, reported pain,

3

and limp, the ALJ noted that "objective imaging of the claimant's hands were unremarkable, and she had a 'fairly good' range of motion in her back." (AR 20). Finally, the ALJ found that despite Plaintiff's degeneration in her hip and lumbar spine, "she had no edema, was not noted to be walking with a limp, and clinicians were not constantly recording reduced strength, reduced sensation, or a reduced ability to complete postural movements." (AR 20).

Plaintiff first argues that the ALJ erred in relying on her being "virtually symptom free" in 2001, years prior to her alleged onset date, while ignoring evidence that her Legg-Calve-Perthes disease was causing worsening symptoms after her alleged onset date.

Legg-Calve-Perthes disease is a childhood condition that causes bone in the hip joint to die. The weakened bone may break apart, which can cause the ball of the hip joint to lose its round shape, which may cause pain and stiffness later in life.[1] Plaintiff began complaining of a flare up of her Legg-Calve-Perthes disease in December 2002, and her doctor opined it was due to overuse. (AR 272). Imaging from December 2002 confirmed deformity in her right hip, consistent with her Legg-Calve-Perthes disease. (AR 279). She continued to complain of hip pain in March 2003. (AR 275). By September 2016, Plaintiff's right leg was shorter than her left leg. (AR 291). X-rays of her right hip indicated "shortening of the head and neck with widening of the head consistent with Perthes disease." (AR 297). She was informed that she would ultimately need a right hip replacement done, but her left hip pain needed to be managed before they would consider surgery on her right hip. (AR 291). In December 2016, Plaintiff continued to complain of right hip pain. (AR 295). She was diagnosed with osteoarthritis in her right hip secondary to her Legg-Calve-Perthes disease. (AR 297). While hip replacement was suggested, Plaintiff told her physician that she was not ready for replacement and wanted to avoid surgery for a while. (AR 298).

---

[1] https://www.mayoclinic.org/diseases-conditions/legg-calve-perthes-disease/symptoms-causes/syc-20374343 (last visited April 16, 2021).

The ALJ has failed to explain how being virtually symptom free in 2001 correlates to being symptom free during any period of time after 2001. This failure is especially problematic when the medical record shows worsening symptoms after 2001. The evidence in the record shows that her symptoms returned in 2002 and continued in 2003. (AR 272, 279). By 2016, her right leg was shorter than her left, imaging was showing consistent deformities, and she was diagnosed with osteoarthritis in her right hip. (AR 291, 297). The ALJ failed to explain how a lack of symptoms in 2001 negated the well documented symptoms after 2001.

The ALJ also relied on a series of "normal" findings, none of which disprove Plaintiff's symptoms. The ALJ relies on intact sensation and intact pulses to discredit Plaintiff's reports in increased hip pain exacerbated by driving, as well as decreased range of motion in her right hip. (AR 20). The ALJ also relies on unremarkable imaging of Plaintiff's hand and "fairly good" range of motion in her back to discredit her complaints of fatigue, "pain all over," and walking with a limp. (AR 20). Finally, the ALJ noted that had no edema, was not walking with a limp, and was not noted to have reduced strength, reduced sensation, or a reduced ability to complete postural movements to contrast Plaintiff's complaints of pain in her hip and spine. (AR 20).

As an initial matter, The ALJ relies on intact sensation and intact pulses to discredit Plaintiff's reports in increased hip pain exacerbated by driving, as well as decreased range of motion in her right hip. (AR 20). None of Plaintiff's severe impairments cause decreased sensation or pulses. Plaintiff suffers from Calve-Legg-Perthes disease, fibromyalgia, and ankylosing spondylitis. Any of these three impairments can cause increased hip pain and decreased range of motion. Intact sensation and intact pulses do not on their own discredit Plaintiff's complaints of increased pain and decreased range of motion. This correlation made by the ALJ is illogical. There is no evidence that intact sensation and intact pulses equates to decreased pain.

Next, the ALJ relies on "unremarkable" imaging of Plaintiff's hands and "fairly good" range of motion in her back to discredit her reports of fatigue, pain, and the fact that she walked with a limp, which is illogical. (AR 20). While Plaintiff did complain of some issues with her hands, the majority of her impairments and pain complaints involve her spine and hips. It is illogical to use unremarkable imagining of her hands to discredit her limp and complaints of pain associated with her spine and hips. Moreover, Plaintiff suffers from the severe impairment of fibromyalgia. A lack of objective evidence, such as reduced strength, reduced sensation, or a reduced ability to complete postural movements, is not enough to discount subjective symptoms of pain caused by fibromyalgia. *See Thomas v. Colvin*, 745 F.3d 802, 806-07 (7th Cir. 2014) ("[A] lack of medical evidence supporting the severity of a claimant's symptoms is insufficient, standing alone, to discredit her testimony. Because all of the other reasons given by the ALJ were illogical or otherwise flawed, this reason cannot alone support the finding that [claimant] was incredible."). Fibromyalgia's "cause or causes are unknown, there is no cure, and . . . its symptoms are entirely subjective." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). The ALJ erred in relying on objective evidence alone to discount Plaintiff's complaints of pain.

Equally troubling, the ALJ also states that "there is no indication that [Plaintiff] uses a prescribed assistive device, her strength was constantly impaired, had muscle spasms or atrophy, an impaired gait or station, her reflexes were impaired, or her sensation was impaired." It seems that the ALJ has not considered that neither Plaintiff's fibromyalgia nor her ankylosing spondylitis would result in impaired reflexes, impaired sensation, or muscle spasms or atrophy. As discussed above, fibromyalgia causes widespread pain, but it does not necessarily cause impaired reflexes or sensation, nor does it cause muscle spasms or atrophy. Similarly, there is no evidence that ankylosing spondylitis affects reflexes, sensation, muscle spasms, or atrophy. Ankylosing

6

spondylitis is a rare type of arthritis that causes pain and stiffness starting in the lower back and spreading to the neck and other parts of the body.[2] There is no cure, and the damage does not always show up on imaging tests. The ALJ acknowledged that Plaintiff's imaging supported her diagnosis, and that she had mild degeneration, compression of nerve roots, stenosis, diffuse spondylosis (inflammation), and asymmetric bulging in the lumbar spine. (AR 20). Despite the imaging supporting Plaintiff's complaints of pain, the ALJ relied on "no dizziness, no extremity weakness, no gait disturbance," moderate improvement in pain with medication, and negative straight leg raising to discredit Plaintiff's complaints of pain. (AR 20). None of those findings indicate that Plaintiff was not in pain due to either her fibromyalgia or ankylosing spondylitis. Extremity weakness, dizziness, and gait disturbance are not common symptoms of either fibromyalgia or ankylosing spondylitis. The ALJ erred in relying on objective medical evidence to discount Plaintiff's pain.

      Finally, the ALJ seems to rely both on evidence of positive straight leg raising and negative straight leg raising in discussing Plaintiff's pain. The ALJ states that Plaintiff had "negative straight leg raising" in one sentence to contrast Plaintiff's complaints of pain. (AR 20). A few sentences later, in the same paragraph, the ALJ states that "[t]he evidence consistently reveals a positive straight leg raising" when discussing how Plaintiff was not as limited as she alleged. (AR 21). It is unclear whether the ALJ properly considered the evidence of Plaintiff's straight leg raising testing, as the ALJ does not seem to understand that consistent positive straight leg raising supports Plaintiff's complaints of pain rather than discredits her complaints.[3] The ALJ has failed

---

[2] https://www.webmd.com/ankylosing-spondylitis/what-is-ankylosing-spondylitis (last visited April 20, 2021).

[3] Camino Willhuber GO, Piuzzi NS. Straight Leg Raise Test. [Updated 2021 Feb 8]. In: StatPearls [Internet]. Treasure Island (FL): StatPearls Publishing; 2021 Jan-. Available from: https://www.ncbi.nlm.nih.gov/books/NBK539717/ (last visited April 20, 2021).

to build a logical bridge from the evidence to the conclusion in multiple areas in the analysis of Plaintiff's subjective symptoms. This error requires remand.

### B. Other Issues

Plaintiff also raises additional issues regarding the VE's testimony, her subjective symptoms, and the RFC. Because the ALJ erred in evaluating Plaintiff's Legg-Calve-Perthes disease and her subjective symptoms, remand is appropriate. Proper analysis and discussion of her hip impairment and her subjective symptoms of pain may alter the discussion and analysis of these other areas. The Court remands this case due to the ALJ's failure to properly consider Plaintiff's Legg-Calve-Perthes disease and subjective symptoms of pain.

Though Plaintiff requests an award of benefits, that remedy is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). In this case, remand, not an immediate award of benefits, is required.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Complaint [DE 17], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further administrative proceedings. The Court **DENIES** the request for an award of benefits.

SO ORDERED on April 22, 2021.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT
